BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

SHAWN N. ANDERSON
United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

JOHNNY H. WALKER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

MIKEL W. SCHWAB
Chief, Civil Division
JESSICA F. WESSLING
Assistant United States Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Tel.: (671) 472-7332 / Fax: (671) 472-7215

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

|  |  |
|---|---|
| ANDREW SABLAN SALAS, | Case No. 1:22-cv-0008 |
| *Plaintiff,* | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| v. |  |
| UNITED STATES OF AMERICA, | Hearing: October 13, 2022 |
| *Defendant.* | Time: 10:00 a.m. |

## INTRODUCTION

As explained in Defendant's brief in support of its motion to dismiss ("Def.'s Br."), the animal fighting prohibitions in the Animal Welfare Act plainly apply to the Northern Mariana Islands, there is no requirement that Congress specifically name the Northern Mariana Islands in legislation that can be generally applied under its Commerce Clause power, and there is a clear federal interest in regulating activity that definitionally affects interstate commerce—with that interest outweighing any nonexistent intrusion on "local affairs." Plaintiff's opposition brief ("Pl.'s Br.") fails to cast doubt on Defendant's arguments. The Court should therefore grant Defendant's motion and dismiss the case.

## ARGUMENT

## I.   THE ANIMAL WELFARE ACT APPLIES TO THE NORTHERN MARIANA ISLANDS.

Plaintiff ignores one of the central arguments in Defendant's motion to dismiss. As explained, Def.'s Br. at 13–14, there is no dispute that, as of January 9, 1978, the Animal Welfare Act imposed a general prohibition on animal fighting that applied to every State and to Guam. Specifically, in 1978, the statute made it "unlawful for any person to knowingly sponsor or exhibit an animal in any animal fighting venture to which any animal was moved in interstate or foreign commerce." 7 U.S.C. § 2156(a) (1976). It also made it illegal everywhere to buy, sell, deliver, or transport an animal for participation in an "animal fighting venture" or to use the Postal Service to promote an "animal fighting venture." *Id.* § 2156(b), (c). An "animal fighting venture" was defined as "any event which involved a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment except that the term . . . shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal or animals, such as waterfowl, bird, raccoon, or fox hunting."

1

*Id.* § 2156(g)(1). "Interstate or foreign commerce," in turn, meant "any movement between any place in a State to any place in another State or between places in the same State through another State; or any movement from a foreign country into any State." *Id.* § 2156(g)(3). And "State" was defined so as to include all fifty states and Guam (along with the other territories): "the term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States." *Id.* § 2156(g)(4). Thus, it is uncontested that the statute generally prohibited animal fighting in each and every one of the States and in Guam as of January 9, 1978. *See* Pl.'s Br. at 5 (admitting this). To put it in Plaintiff's preferred terms, § 2156(a) had the "practical effect," *id.* at 6, of banning animal fighting ventures (other than cockfighting) in Guam and in all States. Consequently, that general statutory provision also applied in the Northern Mariana Islands under the terms of the Covenant. *See* Covenant § 502(a)(2). The 2018 amendment removing the cockfighting exception and extending that general prohibition to cockfighting therefore also applies in the Northern Mariana Islands, because any amendment to a law applicable in the Northern Mariana Islands as of 1978 also applies to the Northern Mariana Islands. *See* Covenant § 502(a)(2); *see also* Pl.'s Br. at 9 (acknowledging this).

Plaintiff misconstrues the statute when he refers to a "cockfight prohibition" that did not apply to Guam or uniformly to the States. *See, e.g.,* Pl.'s Br. at 5, 10. In fact, the statute has never contained a standalone "cockfight prohibition." Its structure is different. It set forth in three subsections the generally applicable prohibitions on "animal fighting ventures," 7 U.S.C. § 2156(a)–(c) (1976), which indisputably applied in Guam, and, in another subsection, provided a separate carve-out provision for cockfighting, *id.* § 2156(d), which also applied in Guam to remove cockfighting there from the general prohibitions since cockfighting was not unlawful in Guam. The carve-out specified that the prohibited activities related

to animal fighting ventures "shall be unlawful with respect to fighting ventures involving live birds only if the fight is to take place in a State where it would be in violation of the laws there of." *Id*. Indeed, Plaintiff acknowledges that, in 1978, cockfighting was lawful in Guam only because the cockfighting exception in § 2156(d) applied to remove cockfighting from the general prohibitions on activities concerning animal fighting ventures. Pl.'s Br. at 5. The fact that this may have led to cockfighting being legal in some jurisdictions and illegal in others does not mean that any statutory provision did not "apply" to Guam and the several States within the meaning of Section 502 of the Covenant; it means only that the application of the prohibition and conditional exception results in different outcomes in different jurisdictions. Consequently, all aspects of § 2156(d) were the law within Guam and all of the States, and, as such, applied to the Northern Mariana Islands under Section 502 of the Covenant.

This notion of what it means for a law to apply in a particular jurisdiction is consistent with the approach taken by the Ninth Circuit in *Northern Mariana Islands v. United States*, 279 F.3d 1070 (9th Cir. 2002), which held that certain statutory amendments "regardless of their treatment of Guam, are law within Guam" and therefore apply to the Northern Mariana Islands under Section 502 of the Covenant. Plaintiff's effort to distinguish *Northern Mariana Islands* fails. The Ninth Circuit in that case confronted a question distinctly similar to the one presented here: did amendments to the Quiet Title Act exempting states from a twelve-year statute of limitations "apply to Guam" even though they did not actually exempt Guam? 279 F.3d at 1073. The Ninth Circuit answered that they did, reasoning in part that "the amendments, regardless of their treatment of Guam, are law within Guam" and therefore "apply to" Guam within the meaning of Section 502(a)(2) of the Covenant. *Id.* So too here. Even accepting Plaintiff's construction, contrary to the statute's structure, that there is some "cockfighting prohibition" that does not have any effect in Guam, that would not change the fact that § 2156 was the "law within Guam" in

1   1978. Section 2156 therefore "applied to" Guam, and by extension to the Northern Mariana Islands, and

2   its amendments therefore likewise apply to the Northern Mariana Islands. Plaintiff attempts to downplay

3   the Ninth Circuit's reasoning in *Northern Mariana Islands* as "opaque" and "impenetrable," Pl.'s Br. at

4   9, but it is quite clear. In considering whether a law applied in Guam (and the several states) within the

5   meaning of Section 502(a)(2) of the Covenant, the question is not the law's "treatment of Guam," but

6   whether the law was "law within Guam." *Northern Mariana Islands*, 279 F.3d at 1073. Applying that

7   reasoning here compels the conclusion that § 2156 likewise was the law within Guam, regardless of how

8   it treated Guam, and therefore also applied to the Northern Mariana Islands. This same reasoning applies

9   to the several states. Regardless of how the law treated the states, § 2156 was the law within all the several

10  states and therefore "applied" to them within the meaning of § 2156 of the Covenant.

11          Similarly, Plaintiff insists that the "cockfight prohibition" was not of "general applicability" to the

12  states because cockfighting was not prohibited in every state. Pl.'s Br. at 10–12. Again, this ignores the

13  structure of the statute. It contains no "cockfight prohibition" but rather general prohibitions on animal

14  fighting ventures, which applied in every state, and a separate conditional exception for cockfighting,

15  which applied in every state such that cockfighting was illegal under federal law in states where it was

16  illegal under state law and legal under federal law in states where it was legal under federal law.

17  Interestingly, it is only this *exception* for cockfighting that operated differently in different States, not the

18  general prohibitions against animal fighting ventures. Thus, under Plaintiff's theory (wrong though it is),

19  the cockfighting exception itself was not "generally applicable" and therefore would not have applied in

20  the Northern Mariana Islands under Section 502 of the Covenant, and cockfighting would have remained

21  subject to the generally applicable prohibitions on animal fighting ventures in § 2156(a) through (c).

22

4

1   **II.   THE 2018 AMENDMENT TO THE ANIMAL WELFARE ACT NEED NOT**

2   **NAME THE NORTHERN MARIANA ISLANDS.**

3   Defendant agrees with Plaintiff that, if the Court were to hold that § 2156 applied to the Northern

4   Mariana Islands, then it must necessarily hold that the 2018 amendment also applies to the Northern

5   Mariana Islands because, under Section 502(a)(2) of the Covenant, amendments to applicable laws are

6   also made applicable. *See* Pl.'s Br. at 12. In any event, Plaintiff's conditional argument that the 2018

7   amendment must specifically name the Northern Mariana Islands if it is regarded as a "new law" is deeply

8   flawed. As explained in Defendant's opening brief, Section 105 of the Covenant does not come into play

9   here because the 2018 amendment does not rely exclusively on Congress's Territorial Clause powers, and

10  Congress clearly could have (and did) apply the 2018 amendment to all the several States under its

11  Commerce Clause powers. Def.'s Br. at 15–17.

12  Plaintiff insists that there is "no basis" for Defendant's "assumption" that the specific-naming

13  requirement of Section 105 is intended to apply only where Congress acts exclusively under its Territorial

14  Clause powers. Pl.'s Br. at 14. This assertion simply ignores rather than addresses the cited authority

15  supporting Defendant's reading. As explained, the discussion of Section 105 in the Section-by-Section

16  Analysis of the Covenant, which has been employed by the Ninth Circuit as an authoritative interpretive

17  guide, *Northern Mariana Islands*, 399 F.3d at 1065, makes clear that the specific-naming requirement is

18  intended to ensure that Congress uses its broad Territorial Clause powers "purposefully" when it comes

19  to the Northern Mariana Islands. Def.'s Br. at 15–16 (quoting Section-by-Section Analysis at 630).

20  Plaintiff cannot escape the impact of this authority by simply ignoring it.

21  By contrast, Plaintiff's bald insistence that the specific-naming requirement of Section 105 must

22  be construed to apply whenever Congress "cannot as a practical reality" apply a law to the several States

5

is unsupported by reasoned argument or authority. Such a reading is also contrary to the plain text of Section 105. It speaks of law that "cannot be made applicable to the several states," not laws that "actually are applicable." The use of the phrase "be made" in the provision denotes that it is speaking in terms of law that cannot theoretically be applied to the several States, not laws that actually are applicable to the several states. Because the statutory prohibition on animal fighting and the repeal of the conditional exemption for cockfighting are valid exercises of Congress's Commerce Clause authority and do not rely exclusively on the Territorial Clause, the specific-naming requirement is not implicated.[1]

In any event, the 2018 amendment did in fact apply in every state because it changed the law in every state. As explained, there has never been an independent statutory provision prohibiting cockfighting. There are the general prohibitions on activities regarding animal fighting ventures, and, until 2019, there was the conditional exception for cockfighting. Again, that exception imposed a conditional test: cockfighting would be legal if it was legal under state law, and illegal if it was illegal under state law. That test applied in every state and territory, and, in some places, it had the effect of making cockfighting legal, and in others it had the effect of keeping cockfighting illegal. Following the 2018 amendment, which simply struck the subsection setting forth the conditional test from the statute, the conditional test no longer applies anywhere. This changes the law in every state, including those states where cockfighting was illegal under state law. Should those states repeal their prohibitions on cockfighting, it would nevertheless remain prohibited under federal law. Consequently, even assuming Plaintiff's flawed reading of Section 105 as requiring specific naming of the Northern Mariana Islands

---

[1]     It does not matter that some Courts have concluded that the repeal of the cockfighting exception would be permitted under the Territorial Clause. Because the prohibitions on animal fighting ventures and the 2018 amendment repealing the cockfighting exception also invoked and are valid under the Commerce Clause, the 2018 amendment can "be made applicable to the several states" and, therefore, the Northern Mariana Islands need not be specifically named.

whenever a law does not "as a practical reality" apply to the several states, the 2018 amendment would not meet that criterion.

Plaintiff is incorrect that Defendant's construction of the Covenant thwarts the purpose of "preventing the application of laws so as to reach intra-territorial matters within the Northern Mariana Islands where similar intrastate matters within the states are not reached." Pl.'s Br. at 16 (quoting Section-by-Section Analysis at 23–24). In fact, Defendant's construction of the Covenant has precisely the opposite effect. It achieves Congress's intent to make uniform the federal prohibition of cockfighting throughout the states and territories. In other words, it means that precisely the same activities are "reached" in the states as are reached in the Northern Mariana Islands, thereby fulfilling (not subverting) the intent of the Covenant. In any event, as explained more below, prohibited forms of cockfighting are, by definition, not purely "intra-territorial" or "intrastate" activities.

## III.   THE ANIMAL WELFARE ACT DOES NOT GOVERN PURELY INTERNAL AFFAIRS, AND THERE IS A PREVAILING FEDERAL INTEREST IN BANNING COCKFIGHTING.

Plaintiff contends that prohibiting cockfighting in the Northern Mariana Islands violates Sections 103 and 105 of the Covenant because the federal interest in banning cockfighting does not outweigh "the degree of intrusion into the internal affairs of the" Northern Mariana Islands. *De Leon Guerrero*, 4 F.3d at 754; Pl.'s Br. at 17–21. It does not appear that any federal law has ever been deemed not to apply the Northern Mariana Islands under Sections 103 and 105, and the federal prohibition of cockfighting should certainly not be the first. Indeed, as Defendant explained, Def.'s Br. at 17–18, the ban on animal fighting (which now includes an outright ban on cockfighting) does not concern the "internal affairs" of Northern

Mariana Islands, *De Leon Guerrero*, 4 F.3d at 754, it definitionally concerns only matters "in or affecting interstate or foreign commerce," 7 U.S.C. § 2156(f)(1).

Unsurprisingly, Plaintiff, in both his complaint and opposition brief, fails to identify any identifiable way in which the cockfighting prohibition intrudes upon the "internal affairs" of the Northern Mariana Islands. His attempt to do so is unavailing. He cites hearing testimony from the Congressional delegates from Guam and the Virgin Islands about cockfighting in those territories and a well-known anthropological essay about cockfighting in Bali, none of which has anything to do with the Northern Mariana Islands. The two cited sources that do address the Northern Mariana Islands indicate nothing more than cockfights historically have occurred in the Northern Mariana Islands and enjoyed some popularity. Pl.'s Ex. 9, 10, ECF Nos. 8-9, 8-10. That falls far short of supporting Plaintiff's assertion that cockfighting implicates the "local affairs" of the Northern Mariana Islands.

Plaintiff also contends that the 2018 amendment intrudes on internal affairs because the delegate for the Northern Mariana Islands to Congress was not permitted to vote on it. Pl.'s Br. at 19–20. But the representation of the Northern Mariana Islands in the United States Congress is not an "internal affair" of the Commonwealth; it is precisely the opposite, dealing with its external relationship with the United States. And the Covenant did not provide any delegate whatsoever from the Northern Mariana Islands to the United States Congress. When Congress allowed the Northern Mariana Islands to send a delegate to Congress in 2008, it was specified that the delegate would be nonvoting. Pub. L. No. 110-229, § 711, 122 Stat. 754, 868 (2008). The fact that the delegate for the Northern Mariana Islands did not vote on the amendment is therefore not an internal affair and is entirely consistent with the Covenant.

While Plaintiff has fallen flat on his effort to prove an intrusion on the internal affairs of the Northern Mariana Islands, Defendant has demonstrated significant federal interests in banning

cockfighting. The provision explicitly targets animal fighting ventures "in or affecting interstate or foreign commerce," 7 U.S.C. § 2156(f)(1), and Congress found that prohibiting animal fighting is "necessary to prevent and eliminate burden upon [interstate and foreign] commerce, to effectively regulate such commerce, [and to] to protect the human values of this great Nation from the subversion of dehumanizing activities." H.R. Rep. 94-801, at 10 (1976). And Congress found that cockfighting in particular can contribute to the interstate spread of avian flu. 153 Cong. Rec. S451 (daily ed. Jan. 11, 2007) (statement of Sen Cantwell); 153 Cong Rec. E2 (daily ed. Jan. 5, 2007) (statement of Rep. Gallegly); *see also Hernández-Gotay v. United States*, 985 F.3d 71, 79 (1st Cir. 2021) ("Multiple congressional findings underscore the interstate commercial impact of cockfighting.").

Rather than confront the impact of this legislative history, Plaintiff attempts to dodge it, asserting that the legislative history regarding "prior versions" of 7 U.S.C. § 2156 cannot be consulted to identify the federal interests at stake here. Pl.'s Br. at 18 n.13. Plaintiff also attempts to downplay the federal interests as overly "moral" and concerned with the barbary of cockfighting. But that only heightens the federal interest. Where Congress concludes that an activity it finds objectionable affects interstate and foreign commerce, there is a distinct federal interest in prohibiting it. But all the 2018 amendment accomplished was to strike the conditional exception for cockfighting from § 2156(d) and apply the "prior version of § 2156(a) through (c) to all jurisdictions. Thus, it is entirely appropriate—and even necessary—to look to the legislative history regarding those subjections to identify the federal interests behind them.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendant's opening brief, Plaintiff's complaint should be dismissed.

9

Dated: September 29, 2022     Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

SHAWN N. ANDERSON
United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director

 /s/ Johnny Walker  
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

MIKEL W. SCHWAB
Chief, Civil Division
JESSICA F. WESSLING
Assistant United States Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Tel.: (671) 472-7332 / Fax: (671) 472-7215

*Counsel for Defendant*