F I L E D
 Clerk
 District Court
NOV 17 2022
for the Northern Mariana Islands
By_____
       (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANDREW SABLAN SALAS,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | Case No.: 1:22-cv-00008<br><br>**DECISION AND ORDER<br>GRANTING MOTION TO DISMISS<br>WITH PREJUDICE** |

Plaintiff Andrew Sablan Salas filed this civil action seeking declaratory and injunctive relief from the application of the Agriculture Improvement Act of 2018 ("AIA") prohibiting any animal fighting venture under 7 U.S.C. § 2156 as to cockfighting. (Compl. 6, ECF No. 1.)[1] Defendant United States of America ("Government") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requesting dismissal of this action with prejudice alleging the complaint fails to state a claim as a matter of law. (Mot. Dismiss 2, ECF No. 3.) Plaintiff filed his opposition (Opp'n, ECF No. 8), to which the Government filed its reply (Reply, ECF No. 9). The matter was fully briefed and came on for a hearing on October 13, 2022, during which the Court took the matter under advisement. (Min., ECF No. 10.) The Court now issues this decision and order GRANTING the motion to dismiss with prejudice without leave to amend.

      **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the complaint. Plaintiff "has been regularly and actively involved in the sport of cockfighting since childhood" with activities like raising hundreds of roosters

---

[1] Page references to ECF documents refer to the page number provided on the blue ribbon generated by ECF.

1

for cockfighting and entering roosters in competitive cockfights. (Compl. ¶ 5.) He "desires and intends to resume raising roosters for cockfighting purposes, and entering such roosters in competitive cockfights" in the Commonwealth of the Northern Mariana Islands ("CNMI") but "a credible threat exists that he will [be] prosecuted for violation of law, particularly 7 U.S.C. § 2156," which bans cockfights. (*Id.* ¶ 6.)

Section 12616 of the Agriculture Improvement Act of 2018, which went into effect on December 20, 2019, amended 7 U.S.C. § 2156. (*Id.* ¶¶ 8, 9, 14.) Prior to the AIA, § 2156 banned animal fighting in general but had an exception for "fighting ventures involving live birds in a State where it would not be in violation of the law." (*Id.* ¶ 9.) Section 12616 of the AIA deleted that exception thus federally banning cockfighting. (*Id.*) Plaintiff asserts that section 12616 of the AIA had no effect on the fifty states and the District of Columbia because those jurisdictions had already banned cockfighting. (*Id.* ¶¶ 11-12.) The only effect was on the laws in "the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, [and] any other territory or possession of the United States." (*Id.* ¶ 12.)

Plaintiff seeks a declaratory judgment stating that section 12616 of the AIA and 7 U.S.C. § 2156 do not apply to the CNMI, an injunction prohibiting Defendant from enforcing those laws in the CNMI, costs of suit, and all other relief the Court finds just and proper. (Compl. 6.) Plaintiff provides three separate justifications for its requested relief based on the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America" (the "Covenant"), which is an agreement between the United States and the people of the Northern Mariana Islands governing the application of federal law to the Northern Mariana Islands. (*Id.* at 4-6.)

2

First, Plaintiff argues that because § 2156 was not a law of general application in 1978, it does not apply to the CNMI pursuant to section 502 of the Covenant. (*Id.* ¶¶ 19-22.) Second, Plaintiff asserts that § 2156 does not apply to the CNMI pursuant to section 105 of the Covenant because the law cannot be made applicable to the several states. (*Id.* ¶¶ 23-27.) Finally, Plaintiff contends that section 12616 intrudes into an internal affair of the Northern Mariana Islands, particularly cockfighting, in violation of section 103 of the Covenant, which preserves the right of local self-government including internal affairs for the people of the Northern Mariana Islands. (*Id.* ¶¶ 28, 32.)

Conversely, the Government contends § 2156 was a law of general application in 1978 and so under section 502 of the Covenant, it may be amended and such amendment would be and is applicable to the CNMI. (Mot. Dismiss 8.) It further contends that because section 502 of the Covenant applies, Plaintiff's other two arguments fail. (Mot. Dismiss 25; Reply 6.)

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations need not be detailed, but a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. In determining whether a motion to dismiss should be granted, there is a two-step process: first, "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Conversely, "[a] motion to dismiss under Rule 12(b)(6)

3

will be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Bonnichsen v. U.S., Dep't of the Army*, 969 F. Supp. 614, 619 (D. Or. 1997) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)).

Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and limited materials, such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). If a court considers other evidence, "it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Id.* at 907 (citations omitted).

If a motion to dismiss for failure to state a claim is granted, "leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment." *Dog Bites Back, LLC v. JPMorgan Chase Bank, N.A.*, 563 F. Supp. 3d 1120, 1123 (D. Nev. 2021) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)). Federal Rule of Civil Procedure 15(a) dictates that leave should be given freely "when justice so requires" and "in the absence of a reason such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. ANALYSIS

Defendant's motion to dismiss for failure to state a claim attacks the legal sufficiency of Plaintiff's complaint. The central issue is whether the federal cockfighting ban contained in § 2156 is applicable to the CNMI based upon various sections of the Covenant. Plaintiff disputes the

4

applicability of § 2156 "only to the extent that [it] [a]ffect[s] a federal cockfight prohibition in the CNMI." (Opp'n 8.) Presently, § 2156 prohibits all animal fighting ventures, which includes fights not only involving birds, but also other mammals. *See* 7 U.S.C. § 2156(a)(1), (f)(4) (2019). Therefore, Plaintiff contests only one portion of § 2156; he does not dispute that other forms of animal fighting, such as dog fights, are prohibited in the CNMI. As the Government noted at the hearing, this carve-out of a particular section of a statute of the larger AIA, is unprecedented. This Court agrees.

### A. 7 U.S.C. § 2156

The pertinent version of 7 U.S.C. § 2156 appeared in the Animal Welfare Act Amendments of 1976, Pub. L. No. 94-279, 90 Stat. 421 (Apr. 22, 1976). Section 2156 provided that "[i]t shall be unlawful for any person to knowingly sponsor or exhibit *an animal* in any animal fighting venture to which *any animal* was moved in interstate or foreign commerce." 7 U.S.C. § 2156(a) (1976) (current version at 7 U.S.C. § 2156) (emphasis added).

However, it had an exception that stated: "Notwithstanding the provisions of subsections (a), (b), or (c) of this section, the activities prohibited by such subsections shall be unlawful with respect to fighting ventures *involving live birds only* if the fight is to take place in a State where it would be in violation of the laws thereof." *Id.* at (d) (emphasis added). State was defined to mean "any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States[.]" *Id.* at (g)(4). In other words, cockfighting was federally unlawful in a particular state only if the state also deemed cockfighting unlawful. If a state law authorized cockfighting, then there was no federal prohibition on cockfighting in that state.

In December of 2018, "Congress approved the Section 12616 amendments, under the Agriculture Improvement Act of 2018, PL 115-334, 132 Stat. 4490 (2018)[,]" which eliminated the

cockfighting exception such that the ultimate effect was "the prohibition of animal fighting ventures, including live-bird fighting, in every United States jurisdiction[.]" *Club Gallístico de Puerto Rico Inc. v. United States*, 414 F. Supp. 3d 191, 200 (D.P.R. 2019) (citations omitted), *aff'd sub nom. Hernandez-Gotay v. United States*, 985 F.3d 71 (1st Cir. Jan. 14, 2021). Currently, § 2156 provides that "[i]t shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture." 7 U.S.C. § 2156(a)(1) (2019). Animal fighting venture is defined as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment," and animal is defined as "any live bird, or any live mammal, except man." *Id.* at (f)(1), (f)(4).

### B. Analysis Under Section 502(a) of the Covenant

"To determine whether a federal statute applies in the [CNMI], the Court looks to either Section 502(a)(2) or 105 of the Covenant." *Jiang Li Rong v. H.K. Ent. Overseas Invs. Ltd.*, Civil Case No. 05-0048, 2008 U.S. Dist. LEXIS 139144, at *5, 2008 WL 11343485, at *2 (D. N. Mar. I. Apr. 21, 2008) (citing *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993)). Section 502 of the Covenant "governs the application to the CNMI of federal laws existing prior to January 9, 1978," while "Section 105 governs the application of federal laws enacted after that date." *Richards*, 4 F.3d at 756. As stated above, § 2156 existed prior to 1978; therefore, section 502 is the pertinent section of the Covenant to determine whether § 2156 applies to the CNMI. Thus, the Court need not address the parties' arguments on whether section 105 of the Covenant precludes application of § 2156 to the CNMI. Additionally, the parties also agreed in their briefs and at the hearing that section 502 of the Covenant governs, as opposed to section 105. (See Opp'n 18; Reply 6.)

///

Section 502 of the Covenant states:

(a) The following laws of the United States in existence on [January 9, 1978] and subsequent amendments to such laws will apply to the Northern Mariana Islands, except as otherwise provided in this Covenant:

> (1) those laws which provide federal services and financial assistance programs and the federal banking laws as they apply to Guam; Section 228 of Title II and Title XVI of the Social Security Act as it applies to the several States; the Public Health Service Act as it applies to the Virgin Islands; and the Micronesian Claims Act as it applies to the Trust Territory of the Pacific Islands;
>
> (2) those laws not described in paragraph (1) which are applicable to Guam and which are of general application to the several States as they are applicable to the several states[.]

Thus, the test to determine whether § 2156 is presently applicable to the CNMI is whether § 2156 was a law "applicable to Guam" and was "of general application to the several States" in 1978. *See Northern Mariana Islands v. United States*, 279 F.3d 1070, 1073 (9th Cir. 2002). Plaintiff argues that in 1978, § 2156 was neither a law applicable to Guam nor was of general application to the several states such that the law does not apply to the CNMI. (Opp'n 11, 16.)

### i. Section 2156 Was Applicable to Guam in 1978

Plaintiff contends that the 1976 cockfight prohibition contained in the Animal Welfare Act was not applicable to Guam in 1978 because Guam did not ban cockfighting, and thus cockfighting was not banned federally. (Opp'n 11.) However, just because § 2156(d) did not create a federal ban on cockfighting in Guam does not mean that the statute was not applicable to Guam. The dispute between the parties appears to arise over the definition of the term "applicable." The Ninth Circuit has defined "applicable to Guam" as used in the Covenant, *Northern Mariana Islands v. United States*, 279 F.3d

7

at 1073-74, and its definition is precedential and carries more weight than Plaintiff's proposed definition of "apply." (*See* Opp'n 12.)

In *Northern Mariana Islands v. United States*, the Ninth Circuit addressed whether the 1986 amendments to the Quiet Title Act, which exempted states from the Quiet Title Act's statute of limitations, applied to Guam, to decide the first element in the test of determining the statute's applicability to the CNMI. 279 F.3d at 1072-73. Ultimately, the Ninth Circuit held that "[b]ecause the Quiet Title Act was in existence on January 9, 1978, and because the Quiet Title Act is applicable to Guam [pursuant to prior Ninth Circuit precedent] and to the States generally, the Quiet Title Act and its amendments are applicable to the CNMI[.]" *Id.* at 1073 (footnote omitted). In arriving at this conclusion, the Ninth Circuit rejected the government's argument that the 1986 Quiet Title Act amendments are not "applicable to Guam" because the amendment "did not exempt Guam from the Quiet Title Act's twelve-year statute of limitations, as they did the 'States.'" *Id.* The Ninth Circuit noted that "[t]he Covenant's framers considered the term 'applicable to Guam' to mean not only 'applicable with respect to' Guam, but also to mean 'applicable within' Guam.'" *Id.* (citing S. Rep. No. 94–433, at 77 (1975)). Further, the Ninth Circuit clarified that "the amendments, regardless of their treatment of Guam, are law within Guam. Thus, these amendments *are* 'applicable to Guam,' even though the amendments themselves did not exempt Guam from the Quiet Title Act's twelve-year statute of limitations." *Id.* at 1073-74.

Plaintiff's argument that § 2156 was not applicable to Guam is very similar to the government's unsuccessful argument that the Quiet Title Act was not applicable to Guam in *Northern Mariana Islands v. United States*. Just as the Quiet Title Act's amendments were applicable to Guam despite not providing Guam the exemption from the statute of limitations, section 2156 was applicable to

Guam even though it did not create a federal ban on cockfighting. *See Northern Mariana Islands v. United States*, 279 F.3d at 1073-74. Plaintiff mischaracterizes § 2156(d) – it did not create a ban on cockfighting; it created a test to determine the federal legality of cockfighting in a specific jurisdiction. The test had to apply to Guam in order for the people of Guam to determine if cockfighting was banned federally. The lack of a ban does not mean that the statute did not apply to Guam. Accordingly, the Court finds that § 2156(d) was "applicable to Guam" in 1978, which satisfies the first element of the test to determine the applicability of § 2156 to the CNMI.

### ii. Section 2156 Was a Law of General Application to the Several States

Plaintiff asserts the same argument as to whether § 2156 was not generally applicable to the several States because the statute "distinguished sharply among the states, treating them entirely differently depending on whether cockfighting was or was not already prohibited by their own laws." (Opp'n 17.) As explained above, "the term 'applicable to Guam' . . . mean[s] not only 'applicable with respect to' Guam, but also . . . 'applicable within' Guam.'" *Northern Mariana Islands v. United States*, 279 F.3d at 1073. Thus, it logically follows that "general application to the several States" means "generally applicable with respect to the several States" and "generally applicable within the several States." *See Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 933 F.3d 1088, 1095 (9th Cir. 2019) (citations omitted) ("[T]he same words or phrases are presumed to have the same meaning when used in different parts of a statute."). That is, § 2156 was applicable to all the states even though the federal legality of cockfighting depended upon the state's own treatment of cockfighting. *See Northern Mariana Islands v. United States*, 279 F.3d at 1073-74. The law was applicable to all the states as it determined whether cockfighting was federally legal in each state. Because § 2156 in 1978 was

applicable to Guam and was of general application to the several States, so too was § 2156 applicable to the CNMI in 1978. Therefore, pursuant to section 502(a)(2) of the Covenant, the amendments to § 2156, including section 12616 of the AIA, apply to the CNMI.[2]

### C. Federal Interest Weighed Against Degree of Intrusion into Internal Affairs

In his final effort to deem section 12616 of the AIA inapplicable to the CNMI, Plaintiff argues that the statute violates the Covenant's right of local self-government because the statute's significant intrusion into the CNMI's cultural, political, and local interests in cockfighting outweighs the purely moral federal interest. (Compl. ¶ 33; Opp'n 23-24.) In response, Defendant argues that the federal ban on cockfighting is not a purely internal affair as the statute only criminalizes cockfighting affecting interstate or foreign commerce (Mot. Dismiss 25); and even if it does affect the CNMI's internal affairs, the federal interests of regulating interstate or foreign commerce, protecting the nation's human values "from the subversion of dehumanizing activities[,]" and controlling the "interstate spread of avian flu." (Reply 8-9 (citations omitted).)

The relevant sections of the Covenant pertaining to these arguments are as follows:

Section 103.

The people of the Northern Mariana Islands will have the right of local self-government and will govern themselves with respect to internal affairs in accordance with a Constitution of their own adoption.

---

[2] Plaintiff also asserted that "Section 12616 of the AlA could not be made applicable to the several States, because, prior to its enactment, it was already in violation of the State law in each State to sponsor or exhibit a bird in a fighting venture." (Compl. ¶ 25.) But Plaintiff misunderstands the word "apply," as explained above. *See Club Gallistico de Puerto Rico Inc.*, 414 F. Supp. 3d at 207 ("The fact that every State in the Nation has already banned livebird fights, does not hinder Congress from reinforcing its illegality at the federal level.").

> Section 105.
>
> The United States may enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands, but if such legislation cannot also be made applicable to the several States the Northern Mariana Islands must be specifically named therein for it to become effective in the Northern Mariana Islands. In order to respect the right of self-government guaranteed by this Covenant the United States agrees to limit the exercise of that authority so that the fundamental provisions of this Covenant, namely Articles I, II and III and Sections 501 and 805, may be modified only with the consent of the Government of the United States and the Government of the Northern Mariana Islands.

The Ninth Circuit "interpret[ed] the first sentence of Section 105 to mean that the United States must have an identifiable federal interest that will be served by the relevant legislation." *Richards*, 4 F.3d at 754. It further determined that the subsequent sentence "does not mean that Congress may not pass any legislation 'affecting' the internal affairs of the CNMI." *Id.* at 755. Rather, "[t]o give due consideration to the interests of the United States and the interests of the Commonwealth as reflected in Section 105," a court should "balance the federal interest to be served by the legislation at issue against the degree of intrusion into the internal affairs of the CNMI." *Id.*; *see Northern Mariana Islands v. United States*, 670 F. Supp. 2d 65, 86 (D.D.C. 2009) (applying such).

In response to the local self-government argument, the Government argues that the *Richards* test should not be employed. (Mot. Dismiss 25.) The Ninth Circuit clarified that the *Richards* balancing test is unnecessary for statutes enacted before the Covenant's 1978 effective date; rather, the test should only be used for legislation enacted after the Covenant's effective date. *See United States v. Chang Da Liu*, 538 F.3d 1078, 1084 (9th Cir. 2008) (citations omitted) (distinguishing pre-1978 federal laws made applicable to the CNMI pursuant to section 501(a) of the Covenant and federal laws enacted after 1978 where courts "balance the federal interests served by the legislation against the degree of intrusion into local affairs"). Because the Court has already determined that § 2156 existed

11

prior to 1978 such that section 501(a) of the Covenant permits its applicability to the CNMI, analysis under the *Richards* balancing test is not warranted. Nevertheless, even under the *Richards* test, this Court concludes the federal interests served by § 2156 do not impermissibly intrude into the CNMI's local affairs.

The United States has several interests in regulating cockfighting. Cockfighting "events have a substantial effect on interstate commerce." *Club Gallistico de Puerto Rico Inc.*, 414 F. Supp. 3d at 206; *see United States v. Gibert*, 677 F.3d 613, 625 (4th Cir. 2012); *Linsangan v. United States*, Civil Case No. 19-00145, 2020 U.S. Dist. LEXIS 196200, at *8, 2020 WL 6130784, at *3 (D. Guam Sept. 30, 2020), *aff'd*, No. 20-17024, 2021 U.S. App. LEXIS 37902, 2021 WL 6103047 (9th Cir. Dec. 22, 2021). Additionally, cockfighting impacts the spread of avian diseases. *Club Gallistico de Puerto Rico Inc.*, 414 F. Supp. 3d at 206 (first citing 153 Cong. Rec. S451-52 (daily ed. Jan. 11, 2007) (Statement of Sen. Cantwell); and then citing 153 Cong. Rec. E2 (daily ed. Jan. 5, 2007) (Statement of Rep. Gallegly)).[3] Congress also contemplated moral considerations when passing the AIA, *id.* at 207, particularly, "the need to ensure 'humane care and treatment' for animals."[4] *Linsangan*, 2021 U.S. App. LEXIS 37902, at *2, 2021 WL 6103047, at *1 (quoting 7 U.S.C. § 2131).

Conversely, Plaintiff proposes that the CNMI has cultural and political interests in cockfighting, which the federal government is attempting to eradicate with colonialist overtones.

---

[3] Although Plaintiff argued that the legislative history relating to the interests of preventing the spread of avian flu came from prior amendments to the AWA such that it did not relate to the 2018 amendment, the Court disagrees because the prior legislative history for regulating cockfighting is relevant to the federal ban on cockfighting. *See Club Gallstico de Puerto Rico Inc.*, 414 F. Supp. 3d at 206 (citing legislative history from 2007 for the 2018 AIA amendments).

[4] Plaintiff contends that the government's interest is "purely moral[.]" (Opp'n 23-24). However, he mistakenly and notably overlooks the government's legitimate and concrete interests in regulating interstate commerce and the spread of avian flu.

(Opp'n 24-27; *see* Compl. ¶ 32 (stating that the cockfighting ban "prohibit[s] and criminaliz[es] a popular and traditional recreational activity").) At the motion to dismiss phase, the Court accepts Plaintiff's factual allegations as true; so, assuming that cockfighting is deeply entrenched in the CNMI's internal affairs, the question is whether that outweighs the federal interests. This is a legal issue such that if the Court determines that the federal interest in banning cockfighting outweighs the degree of intrusion into the CNMI's internal affairs, the motion to dismiss must be granted. *Cf. Linsangan*, 2021 U.S. App. LEXIS 37902, at *2, 2021 WL 6103047, at *1 (affirming grant of summary judgment in part because the plaintiff's "evidence of cockfighting as a cultural practice both predating and outside of American history does not show that cockfighting is objectively deeply rooted in our Nation's tradition").

      The Ninth Circuit and other district courts have found that the federal interests outweigh the degree of intrusion into the CNMI's internal affairs in some circumstances. *See Richards*, 4 F.3d at 755 (holding that a federal audit did not violate the CNMI's right to self-government because the U.S. "has a significant interest in ensuring that federal funds are being used properly" and CNMI's internal fiscal interest was "inextricably link[ed]" to federal interests); *Northern Mariana Islands v. United States*, 670 F. Supp. 2d at 87-90 (finding that the federal interests of effective border control and national security and homeland security issues in applying federal immigration law did not impermissibly intrude on the CNMI's local labor matters that are inseparable from foreign affairs and security); *Camacho v. Northern Mariana Islands*, Civil Action No. 05-0043, 2008 U.S. Dist. LEXIS 144403, at *5, 2008 WL 11405934, at *2 (D. N. Mar. I. Sept. 30, 2008) ("[B]alanc[ing] the interests of [the federal district court's] ability to enforce validly-rendered judgments versus the right of the [CNMI] Legislature to fulfill its statutory duties, the court finds that the balance tilts overwhelmingly

in favor of protecting the independence of the federal judiciary and of providing federal litigants in the [CNMI] a meaningful, timely avenue to collect judgments."); *Olopai v. De Leon Guerrero*, CIV. A. No. 93-0002, 1993 U.S. Dist. LEXIS 13839, at *41, 1993 WL 384960, at *13 (D. N. Mar. I. Sept. 24, 1993) ("Because the CNMI rebates most of the taxes it receives while relying so heavily on federal financial assistance, it cannot be said that requiring public disclosure of information related to those rebates impermissibly intrudes on the internal affairs of the CNMI."); *Chang Da Liu*, 538 F.3d at 1084 ("[T]he balance tips in favor of applicability because the federal government's significant interest in combating international sex trafficking through United States territories outweighs the intrusion into the CNMI's local affairs."). Here, the federal interests in regulating interstate commerce, preventing the spread of avian diseases, and ensuring humane treatment of animals, outweigh the degree of intrusion into the internal affairs of cockfighting. Therefore, the AIA dos not impermissibly intrude on the local affairs of the CNMI.

### D. Dismissal with Prejudice

At the hearing, Plaintiff requested leave to amend if the motion to dismiss was granted because he stated that he could plead more facts regarding the importance of cockfighting in the CNMI. However, as explained above, weighing the federal interest to the degree of intrusion into the CNMI's local affairs per the *Richards* test is unnecessary for statutes enacted before 1978. *See Chang Da Liu*, 538 F.3d at 1084 (citing *Richards*, 4 F.3d at 755). Nevertheless, even applying the *Richards* test, Plaintiff's proffer of providing more facts about how deeply entrenched cockfighting is the CNMI would not cure the deficiency. Such amendment would be futile because the federal interests in regulating interstate commerce, preventing the spread of avian flu, and ensuring the humane treatment

14

of animals outweigh the degree of intrusion into the internal affairs of the CNMI as it relates to the tradition of cockfighting.[5]

## IV.   CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is GRANTED and Plaintiff's complaint is DISMISSED with PREJUDICE.

IT IS SO ORDERED this 17th day of November, 2022.

_____
RAMONA V. MANGLONA
Chief Judge

---

[5] Moreover, because this case is at the motion to dismiss phase, the Court accepted as true well-pleaded facts in the complaint, including Plaintiff's allegation that: "[c]ockfighting [is] a traditional local recreational activity" that is also "a quintessential 'internal affair' of the Northern Mariana Islands." (Compl. ¶ 30.)